IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMA K. HENRY, Executor of the | : | CIVIL ACTION |
| Estate of Patricia Stallworth; and Executor | : | |
| of the Estate of Patricia Henry; and | : | |
| FRANKLIN COFER, Executor of the | : | |
| Estate of James Lee Cofer | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PHILADELPHIA ADULT PROBATION | : | |
| AND PAROLE DEPARTMENT; CITY OF | : | |
| PHILADELPHIA; and, BI | : | |
| INCORPORATED | : | NO.  05-4809 |
| Defendants, | : | |
| | : | |
| | : | |

DuBOIS, J.                                                          SEPTEMBER 6, 2007

## MEMORANDUM

This case arises out of the tragic murders of plaintiffs' decedents, Patricia Stallworth,

Patricia Henry, and James Cofer by Sean Brown who had absconded from home detention

approximately one month earlier.  Plaintiffs filed suit against defendants BI, Incorporated ("BI"),

the City of Philadelphia ("the City") and the Philadelphia Adult Probation and Parole Department

("PAPPD") to recover damages stemming from defendants' roles in the monitoring and

apprehension of Brown.

Presently before the Court are motions for summary judgment filed by BI Incorporated

and the City and PAPPD.  For the reasons that follow, the motions for summary judgment are

granted.

I.      **BACKGROUND**

A.      **Facts**

Brown was convicted on July 16, 2003 of attempted burglary and retail theft and
sentenced to, *inter alia*, six to twenty-three months detention to be served on home detention.
See Hearing Summ., Defs. PAPPD & City Mot., Ex. D.

1.      **Brown's Home Detention and Monitoring**

Prior to his house arrest placement, Brown was interviewed at prison by the PAPPD on
July 29, 2003.  See Narr. for Sean Brown, Defs. PAPPD & City Mot., Ex. F.  One purpose of the
pre-placement interview is to identify "high risk" defendants.  Telese Dep., Defs. PAPPD & City
Mot., Ex. C, at 16-21.[1]  As a result of the interview, Brown was not categorized as a "high risk"
offender.

On August 21, 2003, Brown was placed in the home of his grandmother at 1626 West
Ruscomb Street, Philadelphia to serve the term of his home detention.  To effectuate his
detention, the PAPPD utilized electronic monitoring equipment that had been sold to the
Philadelphia Pre-Trial Services Department in 1993 by BI.  See Request for Admissions, BI
Mot., Ex. B ¶¶ 2, 15.  Specifically, the equipment included, "(a) A transmitter attached to a strap
which was affixed around Sean Brown's ankle at the time of installation," and "(b) A field
monitoring device which is a receiver designed to sense the presence of the transmitter and which
has a modem to communicate over a land telephone system."  Id. ¶ 3.  The equipment is designed

---

[1]"High risk/priority" defendants include, but are not limited to those defendants convicted
murder, sex offenses, kidnapping, robbery, aggravated assault, domestic abuse, or those "with
serious criminal histories of assaultive behavior supervised on a less serious charge."  Electronic
Monitoring Policies and Procedures Manual, PAPPD & City Mot., Ex. G.

so that, if the person wearing the transmitter travels a sufficient distance from the receiver such that the receiver can no longer detect the transmitter signal, an "out of range" alert is sent to a monitoring system operated by the PAPPD.  Id. ¶ 4; Melton Dep., BI Mot., Ex. F, at 29-33.

On August 25, 2003, Probation Officer James Telese attempted to make a home visit to Brown's place of detention, but went to the incorrect address.  See Narr. for Sean Brown, Defs. PAPPD & City Mot., Ex. F.  Telese confirmed the correct address with the PAPPD and Brown later that day, but did not complete the home visit.  Id.

### 2.      Brown's Escape from Home Detention

The following day, August 26, 2003, at 4:50 p.m., the electronic monitoring receiver signaled that Brown was out of range of the designated premises.  Id.  The out of range alert was received by the PAPPD monitor room at 4:56 p.m.  Id.  Later that evening, the monitor room called Brown's grandmother who confirmed that Brown was not in the house.  Id.  Officer Telese received notification from the monitor room that Brown went out of range on August 27, 2007. Id.  On August 28, 2007, a manual detainer was issued and Officer Telese requested that the Warrant Unit go to the home detention location, attempt to apprehend Brown, and collect the electronic monitoring equipment.  Id.  The Warrant Unit went to the home detention location the following day, August 29, 2007, searched the home, and was unable to locate Brown.  Id. Brown's grandmother informed the Warrant Unit when they arrived that Brown "was going on the run."  Warrant Unit Contact Entry, PAPPD & City Mot., Ex. L.

Following the unsuccessful apprehension attempt, Officer Telese and his supervisor Aaron Finney initiated the wanted card process.  The wanted card informed other law enforcement personnel who ran Brown's name through either the Philadelphia Crime

Information Center or the National Crime Information Center that Brown was wanted for

probation violations.  <u>See</u> Telese Dep. at 56-57.  On September 10, 2003, the wanted card for

Brown was completed.  Narr. for Sean Brown.  After the issuance of the wanted card, no other

attempts to apprehend Brown were made, and the Philadelphia police were not informed that

Brown had absconded.  Press Dep., PAPPD & City Mot., Ex. H, at 57.

On September 23, 2003, Brown followed fifteen year old Patricia Stallworth into the

home that she shared with her mother, Patricia Henry, and step-father, James Cofer at 5456

Bingham Street, Philadelphia.  Brown raped and murdered both mother and daughter, and

murdered Cofer.  Brown Guilty Plea Hearing, N.T. 1/3/2005, Pl.'s Resp., Ex. N, at 57-77.

Brown's prints were found at the crime scene. <u>See</u> Activity Sheet, Pls' Resp. to PAPPD & City

Mot., Ex. P.  He was arrested on October 7, 2003 at 6310 Fox Hill Road, Philadelphia, and

confessed to the rapes and murders at that time.  <u>Id.</u>  At the time of Brown's arrest, he was not

wearing the electronic monitoring transmitter; there is no evidence as to how or when the

transmitter was removed.  Farrell Dep., at 223-25, Pl.'s Resp., Ex. C.

Brown pled guilty to one count of rape and three counts of murder on January 3, 2005 in

the Court of Common Pleas of Philadelphia.  Brown Guilty Plea Hearing, N.T. 1/2/2005.  On the

basis of his plea, Brown was sentenced to, *inter alia*, life in prison without parole.  <u>Id.</u> at 111-14.

### B.    Procedural History

On September 8, 2005, plaintiffs Norma K. Henry (executor of the estates of

Patricia Henry and Patricia Stallworth) and Franklin Cofer (executor of the estate of James

Cofer) filed suit against BI Incorporated, the manufacturer of the ankle bracelet worn by Brown

during his house arrest, the PAPPD and the City of Philadelphia.  The Complaint asserts four

4

claims as follows:

Count I:       Negligence against defendants PAPPD and the City
Count II:      Products Liability against defendant BI Incorporated
Count III:     42 U.S.C § 1983 Claim (substantive due process) against defendants
               PAPPD and the City
Count IV: Third party beneficiary of a contract against all defendants

On April 19, 2007, BI filed a motion for summary judgment, and on April 20, 2007

PAPPD and the City jointly filed a motion for summary judgment.  Those motions are now fully

briefed.

## II.    STANDARD OF REVIEW

A court should grant summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The

Supreme Court has further ruled that a "genuine" issue exists if "the evidence is such that a

reasonable jury could return a verdict for the non-moving party," and a factual dispute is

"material" when it "might affect the outcome of the suit under the governing law."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, "the inferences to be drawn from the

underlying facts . . . must be viewed in the light most favorable to the party opposing the

motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  The

party opposing the motion, however, cannot rely merely upon bare assertions, conclusory

allegations, or suspicions to support its claim.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965,

969 (3d Cir. 1982).

III.   **CLAIMS AGAINST DEFENDANT PHILADELPHIA ADULT PROBATION AND
PAROLE DEPARTMENT ("PAPPD")**

Plaintiffs assert three claims against defendant PAPPD: negligence (Count I), violation of

plaintiffs' decedents' substantive due process rights pursuant to 42 U.S.C. § 1983 (Count III);

and third party beneficiary of a contract (Count IV).

Defendants PAPPD and the City argue that plaintiffs' claims against the PAPPD are

barred by the Eleventh Amendment because the PAPPD is an arm of the state.[2]  The Court

agrees.

A.   **Legal Standard–Eleventh Amendment Immunity**

The Supreme Court has consistently held that the Eleventh Amendment immunizes an

unconsenting state from suits brought in federal court by its own citizens or by citizens of another

state.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  The Eleventh

Amendment may bar a suit even though a state is not named as a party to the action, so long as

the state is deemed the real party in interest.  Regents of the Univ. of Cal. v. Doe, 519 U.S. 425,

429 (1997).

In Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655 (3d Cir. 1989), the Third

Circuit held that to determine whether a suit against an entity is actually a suit against the state

itself, a court must consider: "(1) the source of the money that would pay the judgment (i.e.,

whether that source would be the state); (2) the status of the entity under state law; and (3) the

_____

[2]The Court independently observes that an Adult Probation and Parole Department, as a
department of the First Judicial District of Pennsylvania, is not a separate legal entity for the
purposes of § 1983 liability.  See, e.g., Zinser v. Adult Probation-Parole Dept. of Montgomery
Cty, 2007 U.S. Dist. LEXIS 931, *2 (E.D. Pa. Jan. 8, 2007).  However, the PAPPD does not
move for summary judgment on this ground.  Had the objection been made, the Court would
have substituted the First Judicial District of Pennsylvania as a defendant for the PAPPD.

degree of autonomy the entity has." Benn, 426 F.3d at 239 (citing Fitchik, 873 F.2d at 659).

There are two relevant exceptions to the Eleventh Amendment's grant of sovereign immunity to states and state agencies. See Alden v. Maine, 527 U.S. 706, 755 (1999); M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark, 344 F.3d 335, 344-45 (3d Cir. 2003). First, Congress may abrogate Eleventh Amendment immunity if it has "unequivocally expresse[d] its intent to" do so and acted "pursuant to a valid exercise of power." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996) (quoting Green v. Mansour, 474 U.S. 64, 68 (1985)); see also Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 726 (2003). Second, states may waive their immunity and consent to be sued. Alden, 527 U.S. at 755.

Accordingly, the Court first analyzes whether the Commonwealth of Pennsylvania is the real party of interest in a suit against the PAPPD and second determines whether the Eleventh Amendment's grant of sovereign immunity bars plaintiffs' federal and state law claims against the PAPPD.

**B.     Defendant PAPPD is an Arm of the State**

It is undisputed that the PAPPD is formally an agency of Pennsylvania's First Judicial District. See Finney Dep., PAPPD & City Mot., Ex. B, at 108.[3] In Benn v. First Judicial District of Pennsylvania, 426 F.3d 233, 240 (3d Cir. 2005), the Third Circuit applied the Fitchik factors and held that a suit against the First Judicial District and its agencies was a suit against the Commonwealth of Pennsylvania. In so ruling, the Third Circuit relied on its earlier decision in Callahan v. City of Philadelphia, 207 F.3d 668 (3d Cir. 2000), where the Court held that

---

[3]As previously noted, Aaron Finney is a probation officer supervisor for the House Arrest Unit of the Philadelphia Adult Probation and Parole Department. See Finney Dep. at 5-6.

7

> the Pennsylvania constitution provides for the vesting of the Commonwealth's judicial power in a 'unified judicial system' which includes all of the courts in Pennsylvania. Pa. Const. art. V, § 1. Moreover, the constitution provides that the Pennsylvania Supreme Court will exercise "general supervisory and administrative authority" over the unified judicial system. Id. §§ 1, 2, and 10. All courts and agencies of the unified judicial system, including the Philadelphia Municipal Court, are part of "Commonwealth government" and thus are state rather than local agencies. See id. § 6(c); 42 Pa. Const. Stat. Ann. § 102 (West Supp. 1999); 42 Pa. Cons. Stat. § 301 (West 1981).

Callahan, 207 F.3d at 672.

Accordingly, under Third Circuit precedent, "the issue of whether Pennsylvania's judicial districts are an arm of the state is not open to dispute." Haybarger v. Lawrence County Adult Probation and Parole, 2007 U.S. Dist. LEXIS 18314, *6 (W.D. Pa. Mar. 14, 2007) (holding that, as a matter of law, defendant Lawrence County Adult Probation and Parole Department "is an arm of the state and as such, has immunity from suit").[4] Because the PAPPD is an agency of the First Judicial District, the PAPPD is an arm of the state. Id.

Plaintiffs argue that the PAPPD was "acting as an agent of the City in all respects in the maintenance of Sean Brown on house arrest, and as such is amenable to suit . . . ." Pls' Resp. to PAPPD & City Mot. at 10. However, they do not cite any law to support their theory that, for Eleventh Amendment purposes, a state entity can become a local entity by performing local government functions. In fact, the Third Circuit recently rejected similar arguments in Benn.

In Benn, plaintiff had been employed as a probation and parole officer for the First

---

[4]The Court notes that other courts in this circuit have held that Adult Probation and Parole Departments in the Commonwealth are agencies of the county government. See, e.g., Zinser v. Adult Probation-Parole Dept. of Montgomery Cty, 2007 U.S. Dist. LEXIS 931, *2 (E.D. Pa. Jan. 8, 2007) ("[T]he Adult-Parole Department of Montgomery County is not a proper defendant in a § 1983 action because it is a mere government department and has no legal identity separate from Montgomery County."). In light of the Third Circuit's holding in Benn, 426 F.3d 233, this Court respectfully disagrees with Zinser on this issue.

Judicial District of Pennsylvania, and brought suit against his former employer.  The court, in holding that the First Judicial District was a state entity, considered, *inter alia*, that plaintiff's "paycheck was issued by the City of Philadelphia; the union to which he belonged negotiated its contracts with the City; he was required to live within Philadelphia city limits; and the car he was given for work assignments was owned by the City."  Benn, 426 F.3d at 240.  The court did not consider this entanglement with the municipal government persuasive.  Instead the court held that the local funding of the Judicial District and its counterparts "does not transform them into local entities for Eleventh Amendment purposes."  Id.; see also County of Allegheny v. Commonwealth, 534 A.2d 760, 765 (Pa. 1987).

Accordingly, the Court rejects plaintiffs' argument that by its actions involving the City, the PAPPD was transformed into a local entity and concludes that the PAPPD, as an agency of the First Judicial District is an arm of the state.  Therefore, unless there are any applicable exceptions, plaintiffs' claims against the PAPPD are barred by the PAPPD's Eleventh Amendment sovereign immunity.

### C.  Plaintiffs' 42 U.S.C. § 1983 Claim Against the PAPPD Is Barred By Sovereign Immunity

Section 1983 of Title 42 creates a cause of action against any person who, acting under color of state law, deprives an individual of rights secured by the Constitution or by federal statute.  The Supreme Court has held that Congress did not abrogate a state's Eleventh Amendment immunity in enacting § 1983.  See Quern v. Jordan, 440 U.S. 332, 345 (1987).  In addition, Pennsylvania, by statute, has explicitly reserved its right to immunity from suit in

federal court.  See 42 Pa. Const. Stat. § 8521(b).[5]  Thus, neither of the relevant exceptions apply

and plaintiff's 42 U.S.C. § 1983 claim against defendant PAPPD (Count III) is barred by the

Eleventh Amendment.

> **D.    Plaintiffs' State Law Claims Against the PAPPD Are Barred By Sovereign
>         Immunity**

Plaintiff alleges two state law claims against the PAPPD: negligence (Count I) and third

party beneficiary of a contract (Count IV).  As stated above, it is well-established under

Pennsylvania law that the Commonwealth enjoys immunity from such suits except when the

General Assembly has, by statute, expressly waived the immunity.  1 Pa. C.S. § 2130.

> The Supreme Court of Pennsylvania has further held that a commonwealth party may not
> waive its immunity and render itself liable beyond the exceptions granted by the
> legislature.  Therefore, a claim against a commonwealth party is actionable only if the
> basis for the alleged governmental culpability falls within one of nine exceptions to
> immunity enumerated in the Sovereign Immunity Act.

Apfelbaum v. Amtrak, 2002 U.S. Dist. LEXIS 20321, *5-6 (E.D. Pa. Oct. 17, 2002) (citing  42

Pa. C.S. § 8522(b)).  Specifically, sovereign immunity does not bar claims for damages caused

by (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal

property; (4) commonwealth real estate, highways and sidewalks; (5) potholes and other

dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) national

guard activities; or (9) toxoids and vaccines.  42 Pa. C.S. § 8522(b).   These exceptions should be

interpreted narrowly.  Love v. City of Philadelphia, 543 A.2d 531 (Pa. 1988).

Plaintiffs have not argued that any of the exceptions enumerated in the Sovereign

---

[5]That section provides: "Nothing contained in this subchapter shall be construed to waive
the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh
Amendment to the Constitution of the United States."  42 Pa. Const. Stat. § 8521(b).

Immunity Act are relevant, and the Court concludes that neither plaintiffs' negligence claim nor third party beneficiary of a contract claim fit within these exceptions. Accordingly, the Court concludes that plaintiffs' state law claims against the PAPPD are barred by the PAPPD's sovereign immunity.

      **E.**    **Conclusion**

For the foregoing reasons, the Court concludes that all claims asserted against the PAPPD are barred by the sovereign immunity of defendant PAPPD as a state agency. Accordingly, the Court grants the motion for summary judgment filed by PAPPD and the City with respect to the claims asserted in Counts I, III, and IV against defendant PAPPD.

**IV.**    **CLAIMS AGAINST THE CITY**

Plaintiffs' claims against the PAPPD are also asserted against the City. Specifically, Plaintiffs assert the same three claims against the City: negligence (Count I), violation of plaintiffs' decedents' substantive due process rights pursuant to 42 U.S.C. § 1983 (Count III); and third party beneficiary of a contract (Count IV). The Court analyzes each claim in turn.

      **A.**    **42 U.S.C. § 1983 Claim Against the City**

Count III of the Complaint asserts a § 1983 claim against defendants PAPPD and the City of Philadelphia for allegedly violating plaintiffs' decedents' "substantive due process rights to bodily integrity secured by the Fourth and Fourteenth Amendments . . . ." Compl. ¶ 84. Plaintiffs' substantive due process claim is based on the defendants' conduct in the "investigation, location and apprehension of persons, such as Sean Brown" who abscond from home detention, and "the failure of the Defendant City of Philadelphia and its agencies to respond to 911 emergency calls." Id.

11

42 U.S.C. § 1983 does not create substantive rights, but rather provides a remedy for the violation of rights created by federal law.  To state a claim under § 1983, a plaintiff must demonstrate a violation of a federal or constitutional right by a person acting under color of state law.  See, e.g., Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

Under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) municipalities, such as the City of Philadelphia, are "included among those persons to whom § 1983 applies."  Id. at 690. "A municipal entity may be liable when its policymakers made a deliberate choice from among various alternatives to follow a particular course of action, where the policy reflected deliberate indifference to the constitutional rights of the municipality's inhabitants, and where the policy was the moving force behind a constitutional violation."  Mark v. Borough of Hatboro, 51 F.3d 1137, 1149 (3d Cir. 1995).

"[I]n a Monell case, the 'proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and if so, (2) whether the city is responsible for that violation."  Mark, 51 F.3d at 1149-50 (quoting Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992)).

Plaintiffs allege that the constitutional violation caused by the City's policy was a violation of substantive due process rights.  This violation is predicated on the "state-created danger theory" of due process liability derived from the Supreme Court opinion, Deshaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189 (1989).  See also Mark, 51 F.3d at 1149.  Accordingly, the Court will first addresses whether plaintiffs have demonstrated a

12

constitutional violation under the state created danger theory.[6]

### 1.      Legal Standard–State Created Danger

In DeShaney, the Supreme Court held that the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens.  That case involved a child, Joshua, who suffered permanent brain damage from a severe beating at the hands of his father.  "The complaint alleged that respondents had deprived Joshua of his liberty without due process of law, in violation of his rights under the Fourteenth Amendment, by failing to intervene to protect him against a risk of violence at his father's hands of which they knew or should have known."  DeShaney, 489 U.S. at 193.  In rejecting petitioners' due process argument, the Court stated that "while the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."  Id. at 201.

As the Third Circuit has explained,

> DeShaney stands for the proposition that the Due Process Clause imposes no affirmative duty to protect a citizen who is not in state custody . . . . [H]owever, this does not mean that no constitutional violation can occur when state authority is affirmatively employed in a manner that injures a citizen or renders him "more vulnerable to injury from another source than he or she would have been in the absence of state intervention."  This complement to the DeShaney holding has come to be known in its progeny as the "state-

_____

[6]Plaintiffs argue that "[e]ven if the Court were to decide that Summary Judgment is appropriate with regard to Plaintiffs' state created danger case, that decision would not preclude liability for the City and PAPPD for violation of their Civil Rights pursuant to the Monell doctrine."  Pl.'s Resp. to PAPPD & City Mot. at 18 n.4.  Plaintiffs are mistaken.  A showing of liability under Monell requires the demonstration of a constitutional violation.  The only constitutional violation alleged by plaintiffs is a violation of substantive due process rights, based on the harms to decedents at the hands of a third party that were not prevented by the City.  To impute liability to a municipality on the basis of this claim, plaintiffs must invoke the state-created danger doctrine.  See, e.g., Mark, 51 F.3d at 1149-52.  Any other claim is barred by Deshaney.

created danger doctrine."

Bright v. Westmoreland County, 443 F.3d 276, (3d Cir. 2006) (quoting Schieber v. City of
Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003)); see also Bennett v. City of Phila., __ F.3d __,
2007 U.S. App. LEXIS 19929, *13-16 (3d Cir. Aug. 22, 2007).

Under Third Circuit precedent, the essential elements of a meritorious state-created
danger claim are as follows:

(1)    the harm ultimately caused was foreseeable and fairly direct;
(2)    a state actor acted with a degree of culpability that shocks the conscience;
(3)    some relationship existed between the state and the plaintiff that renders plaintiff
       a foreseeable victim; and
(4)    "a state actor affirmatively used his or her authority in a way that created a danger
       to the citizen or that rendered the citizen more vulnerable to danger than had the
       state not acted at all."

Bennett, 2007 U.S. App. LEXIS 19929, at *16 (quoting Bright, 443 F.3d at 281).  The Third
Circuit has repeatedly emphasized that liability under the state-created danger doctrine "requires
affirmative state action; mere 'failure to protect an individual against private violence' does not
violate the Due Process Clause."  Bright, 443 F.3d at 284 (quoting DeShaney, 489 U.S. at 197);
see also Ye v. United States, 484 F.3d 634, 638 (3d Cir. 2007).

2.    **Analysis**

Plaintiffs argue that the house arrest policies of defendants endangered decedents,
because decedents, as members of the general public, relied on the monitoring services of the
PAPPD and the response of the City to 911 calls.  Because the Court concludes that plaintiffs
have not satisfied the third and fourth elements of a state created danger claim–(a) they have not
shown that plaintiffs' decedents were foreseeable victims, and (b) there was no affirmative action
on the part of the City–plaintiffs cannot demonstrate a constitutional violation under this doctrine

as required for <u>Monell</u> liability.  For that reason, the Court need not analyze the first and second elements of the state-created danger doctrine.

### a.      Decedents Were Not Foreseeable Victims

The third element of the state-created danger doctrine, the "foreseeable plaintiff" element, "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, (3d Cir. 1997) (quoting <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1209 n.22 (3d Cir. 1996)).  Plaintiff must "be a member of a discrete class of persons subjected to the potential harm brought about by the state's actions."  <u>Id.</u> Plaintiffs argue that their decedents were "foreseeable plaintiffs" because "[a] convicted attempted burglar was placed on house arrest in their community (within less than three miles and 10 minutes from the place where the Civil Rights of Plaintiffs' decedents were violated)." Pls. Resp. to PAPPD & City Mot. at 19.  The Court disagrees.

Plaintiffs must demonstrate that their decedents belonged to a discrete class of persons distinguishable from the public in general.  <u>See</u> <u>Morse</u>, 132 F.3d at 913 (holding that precedent "exclude[s] from the reach of the state-created danger theory those instances where the state actor creates only a threat to the general population"); <u>Solum v. Yerusalim</u>, 1999 U.S. Dist. LEXIS 8917, *13 (E.D. Pa. June 16, 1999) ("The foreseeable plaintiff may be an individual or a discrete class, but government action or inaction with respect to the general public does not fall within the purview of § 1983.").  Plaintiffs' argument that the geographical proximity of decedents to the location of Brown's home detention rendered them "foreseeable plaintiffs" fails to distinguish decedents from the general public.  In <u>Commonwealth Bank & Trust Co. v. Russell</u>, 825 F.2d 12, 16 (3d Cir. 1987), the Third Circuit rejected a similar argument and held that residents in the

communities surrounding a jail are "part of the 'public at large'" and not a discrete, foreseeable class.  Id. (quoting Martinez v. California, 444 U.S. 277, 285 (1980)).  As in Commonwealth Bank, plaintiffs' decedents were merely members of the public at large, and therefore not foreseeable plaintiffs as required to demonstrate a claim for state-created danger.

> **b.    The City did not Render Plaintiffs' Decedents More Vulnerable Through Affirmative Acts**

As the Third Circuit recently stressed, "under the fourth element of a state-created danger claim, 'liability under the state-created danger theory is predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger.'"  Bright, 443 F.3d at 282 (quoting D.R. v. Middle Bucks Area Vo. Tech. Sch., 972 F.2d 1364, 1374 (3d Cir. 1992)). "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause."  Id.

Plaintiffs argue that "[b]y their affirmative acts of creating and implementing the policies and customs at issue in this case they [defendants PAPPD and the City] placed the Plaintiffs' decedents at significant risk for the very harm that befell them."  Pls. Resp. to PAPPD & City Mot. at 20.  Plaintiffs have not cited any authority for the proposition that "creating and implementing" a policy or custom satisfies the affirmative act requirement.  Even assuming, *arguendo*, that the act of implementing a policy and custom is an affirmative act sufficient to meet the fourth element of the state-created danger doctrine, plaintiffs have failed to identify any policies or customs on the part of the City.  Plaintiffs argue that:

> In their depositions, the FRCP 30(b)(6) designees of the City and PAPPD, Ms. Farrell, Mr. Finney, Mr. Telese and Mr. Press, all testified that the manner in which the maintenance of Mr. Brown's house arrest, including the aftermath of his having absconded, was consistent with the policy, practices and procedures of their respective

16

governmental bodies, and further have admitted the same pursuant to Plaintiffs' Request for Admission.

Pls. Resp. PAPPD & City Mot. at 10.  There are two problems with this argument.  First, the Court notes that deponents Farrell, Finney, Telese and Press are all employees of the First Judicial District and did not testify with respect to the policies of the City.  Second, although plaintiffs argue that the City's actions in the case were consistent with some unstated City policy, plaintiffs do not identify any such policy.  For these reasons, plaintiffs have failed to demonstrate beyond raising "bare assertions" or "conclusory allegations" that the City affirmatively placed the decedents in a position of danger by creating and implementing policies or customs.  See Fireman's Ins. Co., 676 F.2d at 969.

Plaintiffs have alleged no further affirmative acts on the part of the City.  To the extent that plaintiffs' claim is based on the City's failure to "do anything to identify, locate or apprehend Sean Brown . . . other than place 'wanted cards,'" Compl. ¶ 41 such a claim is explicitly foreclosed by Third Circuit precedent.  In Bright, the Third Circuit held that

> We conclude that the state cannot 'create danger' giving rise to substantive due process liability by failing to more expeditiously seek someone's detention, by expressing an intention to seek such detention without doing so, or by taking note of a probation violation without taking steps to promptly secure the revocation of the probationer's probation.

Bright, 443 F.3d at 283-84.  Similarly, plaintiffs' allegation that the City's failure to respond to "the 911 calls made in response to the first shooting by Sean Brown of James Lee Cofer . . . resulted in a state created danger affecting Patricia Stallworth who at the time of the 911 call was not yet dead and Patricia Henry, who at the time of the 911 call had not been raped nor shot," Compl. ¶ 69(f), is insufficient to allege an actionable affirmative act.  Cf. Bennett, 2007 U.S.

17

App. LEXIS 19929, at *22 ("Without legislative activity, we are not prepared to hold that a city that fails to respond promptly to a 911 call must pay for the harm that befalls the caller as a result of the failure.").

In sum, the Court concludes that plaintiffs have not demonstrated that the City affirmatively used its authority "in a way that created a danger" to decedents or that rendered decedents "more vulnerable to danger than had the state not acted at all." Bright, 443 F.3d at 281.

### 3.     Conclusion

Because plaintiffs have failed to establish the third and fourth elements of a state created danger claim, the Court cannot conclude that the rapes and murders of plaintiffs' decedents were caused by a constitutional violation on the part of the City.  Without such a showing, the City is not liable under Monell.  See Mark, 51 F.3d at 1153.  Accordingly, the motion for summary judgment filed by PAPPD and the City is granted with respect to the § 1983 claim asserted against the City.

### B.     Negligence Claim Against the City

Count III of plaintiffs' Complaint alleges that defendants PAPPD and the City were negligent "in the care custody and control of the residence located at 1626 West Ruscomb Street, Philadelphia Pennsylvania which was utilized as a place of confinement for Sean Brown." Compl. ¶ 76.  Plaintiffs concede that summary judgment should be granted regarding the negligence claim against the City because any negligence on the part of the City is not actionable

18

under the Political Subdivision Tort Claims Act, 42 Pa. C.S.A. §§ 8541, *et seq.* ("PSTCA").[7]

See Pls. Resp. to PAPPD & City Mot. 23 n.6.   The Court agrees, and grants the motion for

summary judgment filed by PAPPD and the City with respect to the negligence claim asserted

against the City.

### C.   **Third Party Beneficiary Claim Against All Defendants**

Count IV of the Complaint alleges that

> By reason of the contract between Defendant BI Incorporated and Defendant PAPPD
> and/or Defendant City of Philadelphia to provide a tailored solution for effectively
> managing the criminal population of the City of Philadelphia by the use of electronic
> monitoring devices, it was the intention of the Defendants, and each of them, to protect
> and benefit the public living in proximity to the situs in which such devices were to be
> utilized on persons such as Sean Brown, including Patricia Stallworth, Patricia Henry and
> James Lee Cofer, thereby making Plaintiffs' decedents third party beneficiaries above
> referenced contract, and giving Plaintiffs standing to recover on that failed contract.

Compl. ¶ 88.  It is plaintiffs' argument that (a) plaintiffs' decedents were intended beneficiaries

of the contract between the defendants, (b) that contract "failed", and (c) plaintiffs' decedents

were injured by the "failed" contract.  Because the Court concludes that plaintiffs' decedents

were not intended beneficiaries of any contract between the defendants, plaintiffs cannot state a

claim under the contract.

### 1.   **Legal Standard–Third Party Beneficiary of a Contract**

Under Pennsylvania law, a party becomes a third party beneficiary of a contract:

> Only where both parties to the contract express an intention to benefit the third party in
> the contract itself, unless the circumstances are so compelling that recognition of the

---

[7]Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. C.S.A. §§ 8541, *et seq.*, immunizes municipalities from liability for all state law tort claims.  See Smith v. School Dist. of Philadelphia, 112 F. Supp. 2d 417, 424 (E.D. Pa. 2001).  The Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. C.S.A. § 8541.

beneficiary's right is appropriate to effectuate the intention of the parties, and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Scarpitti v. Weborg, 609 A.2d 147, 150-51 (Pa. 1992).  Where a government contract is at issue, the test for whether a member of the public is a third-party beneficiary must be strictly applied. Drummond v. Univ. of Pennsylvania, 651 A.2d 572, 578 (Pa. Commw. Ct. 1994).  "Generally, a promisor who contracts with a government is not subject to contractual liability to a member of the public because individual members of the public are merely incidental beneficiaries."  Id.

### 2.    Analysis

Plaintiffs argue that BI, the City, and the PAPPD formed a partnership "the goal of which is to provide safety to the community from persons who are placed on house arrest utilizing BI's [electronic monitoring] equipment . . . . The obvious and only beneficiaries of such a contract are the members of the community in which house arrest defendants are detained.  There is no other reason for the agreement."  Pls. Resp. to PAPPD & City Mot. at 21.  Taken to its logical conclusion, this theory would allow any member of the public to sue as a third-party beneficiary of any contract that was intended to benefit the public.

Pennsylvania prohibits such an expansive interpretation of third-party beneficiary rights. In Hicks v. Metro. Edison Co., 665 A.2d 529 (Pa. Commw. Ct. 1995), the plaintiff alleged that he was the third-party beneficiary of a contract between Asplundh Tree Expert Company and Metropolitan Edison, which had hired Asplundh to inspect its utility poles.  (Plaintiff had been in an accident involving one of the utility poles.)  Id. at 531.  The Commonwealth Court refused to extend the concept of third-party beneficiary status to plaintiff because it would require extending beneficiary status to "virtually every member of the public."  Id. at 535.  "We do not

believe that parties ordinarily intend to confer such benefits upon the public at large or assume

such massive potential liability when they enter into a contract." Id.; see also Wawrzynek v.

Statprobe, Inc., 422 F. Supp. 2d 474, 482-83 (E.D. Pa. 2005) (refusing to expand definition of

third-party beneficiary to a contract where such status would apply to large numbers of the

general public).

      The only possible situation in which plaintiffs could recover as third-party beneficiaries

under this contract would be if the contract between the defendants provided that BI would be

liable to the public.  "[A] promisor who contracts with a government . . . to do an act for or

render service to the public is not subject to contractual liability to a member of the public . . .

unless the terms of the promise provide for such liability." Restatement (Second) of Contracts

§ 313(2)(a); Drummond, 651 A.2d at 579 ("There must be language evincing an intent that the

party contracting with the government will be held liable to third parties in the event of

nonperformance.").  Plaintiffs have offered no evidence beyond "bare assertions, conclusory

allegations, or suspicions" to support the claim that the contract between the defendants

manifested such an intent.  Such speculation is insufficient to withstand defendants' motion for

summary judgment.  See Fireman's Ins. Co., 676 F.2d at 969.

      Accordingly, the Court grants the motion for summary judgment filed by the PAPPD and

the City on this claim.  Because the Court concludes that there is no genuine issue of material

fact as to this claim with respect to all defendants, the Court further grants BI's motion for

summary judgment on this claim.[8]

---

      [8]Plaintiffs contend that BI did not move for summary judgment on this claim and
therefore "the case should proceed to trial on the alternate claim of liability unaddressed by BI's
motion practice."  Pls. Resp. to BI Mot. 8 n.3.  The Court disagrees.  Although BI's motion for

V.      **CLAIMS AGAINST BI**

In Count II of the Complaint, plaintiffs set forth a products liability claim against defendant BI.  Plaintiffs allege that the electronic monitoring equipment designed and manufactured by BI "was defective as not being fit for the intended purpose of monitoring the whereabouts of dangerous convicted persons such as Sean Brown, including but not limited to, being able to be easily removed and thereby useless in locating the persons intended to be monitored."  Compl. ¶ 80.  Plaintiffs further state in their response to BI's motion for summary judgment that "[b]ased on the discovery material of this case it is the claim of the Plaintiffs that the intended purpose for the equipment manufactured and sold by BI was to maintain public safety."  Pls. Resp. to BI Mot. ¶ 10.

A.      **Legal Standard–Products Liability**

Pennsylvania has adopted Section 402A of the Restatement (Second) of Torts, which governs products liability cases.  Putt v. Yates-American Mach. Co., 722 A.2d 217, 220 (Pa. 1998).  A plaintiff may bring a strict liability action based on an allegedly defective design.  Azzarello v. Black Bros. Co., 391 A.2d 1029, 1022 (Pa. 1987).  Under Pennsylvania law, such a defective design claim proceeds in two steps.

First, the Court must make a threshold legal determination that the product in question is "unreasonably dangerous."  In making this determination, "the judge should 'engage in a risk-utility analysis, weighing a product's harms against its social utility.'"  Moyer v. United Dominion Indus., 473 F.3d 532, 538 (3d Cir. 2007) (quoting Surace v. Caterpillar, Inc., 111 F.3d

summary judgment does not specifically argue the third party beneficiary issue, it sought summary judgment on all claims against BI.   BI Mot. at 9.

22

1039, 1046 (3d Cir. 1997)).  The Third Circuit has identified some of the factors relevant to this

analysis:

> (1) The usefulness and desirability of the product–its utility to the user and to the public
> as a whole; (2) The safety aspects of the product–the likelihood that it will cause injury,
> and the probable seriousness of the injury; (3) The availability of a substitute product
> which would meet the same need and not be as unsafe; (4) The manufacturer's ability to
> eliminate the unsafe character of the product without impairing its usefulness or making it
> too expensive to maintain its utility; (5) The user's ability to avoid danger by the exercise
> of care in the use of the product; (6) The user's anticipated awareness of the dangers
> inherent in the product and their avoidability, because of general public knowledge of the
> obvious condition of the product, or of the existence of suitable warnings or instruction;
> and (7) The feasibility, on the part of the manufacturer, of spreading the loss of setting the
> price of the product or carrying liability insurance.

Id. (quoting Surace, 111 F.3d at 1046).

Second, if the court determines that, as a matter of law, the product is unreasonably

dangerous, "then the case is submitted to the jury to determine whether 'the product left the

supplier's control lacking any element necessary to make it safe for its intended use or possessing

any feature that renders it unsafe for the intended use' and whether such design defect was the

proximate cause of the plaintiff's injuries." Makadji v. GPI Division of Harmony Enters., Inc.,

2007 U.S. Dist. LEXIS 37640, *6 (E.D. Pa. May 23, 2007) (quoting Phillips v. Cricket Lighters,

841 A.2d 1000, 1005 (3d Cir. 2003). Although such a determination is for the jury, "[i]t is a

judicial function to decide whether, under the plaintiff's averment of the facts, recovery would be

justified . . . ." Carr v. Gillis Assoc. Indus., Inc., 227 F. App'x 172, 175 (3d Cir. 2007) (quoting

Azzarello, 391 A.2d at 1026).  "In other words, should the court determine that a defect does not

exist or 'that the defect was not a legal cause of the injury, then the defendant is entitled to

judgment as a matter of law.'" Id. (quoting Surace, 111 F.3d at 1053).

B.        **Analysis**

Plaintiffs' products liability claim is premised on the allegation that the electronic

monitoring equipment "could have been designed to provide greater protection to the public,"

and therefore was defective as a matter of law.  Pl.'s Resp. to BI Mot. at 6 (citing Putt v. Yates-

American Mach. Co., 772 A.2d 217 (Pa. Super. Ct. 1998)).  Plaintiffs point to alternative

designs, such as monitoring equipment utilizing Global Positioning System ("GPS") technology,

as providing greater safety.  Id.  Additionally, plaintiffs

> retained two experts who both provided opinions as to the inadequacy of BI's electronic
> monitoring equipment, as designed, in accomplishing its intended purpose of protecting
> community safety.  Sheriff Evans testified that BI's equipment, in and of itself, provided
> no protection of community safety.  Dr. Kennedy opined, in his report, that the risks to
> the community of recidivism by persons who abscond from house arrest have not been
> reduced by electronic monitoring, and that electronic monitoring does nothing to ensure
> community protection from such persons.

Pl. Resp. to BI Mot. at 3.

BI argues that the device sold by BMI: "functioned as it was designed;" "functioned as it

was expected to function by the PAPPD;" and "due to its function provides a utility to

governmental agencies in response to the need to monitor persons under house detention, which

is less costly and addresses prison overcrowding."  BI Mot. at 3.  BI further argues that because

"plaintiff's experts do not contend that there is any defective aspect to the BI product," that

plaintiff's products liability claim is foreclosed.  BI Mot. at 17.

1.        **The Electronic Monitoring Equipment Is Not Unreasonably Dangerous**

As discussed above, the threshold inquiry in this case is whether the electronic

monitoring equipment is unreasonably dangerous, which the Court answers by engaging in a

risk-utility analysis.  It is plaintiffs' argument that (a) a substitute, safer product is available that

24

utilizes GPS technolgy and (b) BI could eliminate the "unsafe character" of the product without impairing its usefulness. Although arguably these factors weigh in plaintiffs' favor, the other risk-utility factors all weigh in favor of BI.

Plaintiffs have produced no evidence to demonstrate that the product itself is dangerous. Although plaintiffs' experts have opined that the manner in which the PAPPD utilized the product was dangerous, such testimony does not show that the product itself will cause injury. Whether the product was the optimal tool for the PAPPD to utilize in effectuating home detention, is not relevant to the Court's risk-utility analysis. "Risk-utility analysis is an objective test that focuses on the product." Johansen v. Makita U.S.A., Inc., 607 A.2d 637 (Pa. 1992).

Moreover, any risk of harm from using the electronic monitoring equipment must be weighed against the social utility of the product. As plaintiffs' expert Sheriff Warren Evans of Wayne County stated in his deposition, home detention is a less expensive alternative to traditional incarceration, and addresses problems of prison overcrowding. Evans Dep., BI Mot., Ex. H, at 45 ("[I]t gives you the ability to have more people in the system and certainly the ones that are on electronic monitoring are coming in at a much reduced rate than the per diem per a jail bed.").

In sum, plaintiffs have offered no evidence to show that the product itself was in any way unsafe, let alone that the risks of using the product outweigh the social benefits of the product. Instead, plaintiffs urge the Court to hold BI liable for the manner in which the PAPPD utilized the electronic monitoring equipment and for the PAPPD's decision to purchase the equipment.[9]

---

[9]In plaintiffs' response to BI's motion for summary judgment on plaintiffs' products liability claim, plaintiffs advance the argument that "as a partner" with the PAPPD and the City, "BI was responsible for the way in which its partners fulfill their part of the partnership

Pennsylvania's strict products liability jurisprudence simply does not create an actionable claim under that theory of "unreasonable dangerousness."

> 2.      **Plaintiff Has Not Adduced Sufficient Evidence of a Design Defect to Submit to the Jury**

Assuming, *arguendo*, that plaintiffs can proceed past the threshold of the "unreasonably dangerous" inquiry, the Court concludes that there is insufficient evidence of any defect to submit the products liability claim to the jury.  In Oddi v. Ford Motor Co., 234 F.3d 136, 159 (3d Cir. 2000), the Third Circuit held that expert testimony is generally required to submit a claim of defect to the jury.  In that case, the court found that a products liability claim could not be submitted to the jury without expert evidence of defect where the product in question was not "obviously dangerous."  Id.; see also Gower v. Savage Arms, 2002 U.S. Dist. LEXIS 11261, 11266 (E.D. Pa. 2002) ("Without expert testimony that the rifle was defective without a detent safety system, or that the lack of a detent caused the accident, the plaintiffs cannot make out a design defect claim.").  In this case, like Oddi and Gower, the product was not obviously dangerous, and plaintiffs have submitted no expert testimony that evinces any defect in design.

---

agreement."  Pls. Resp. to BI Mot. at 7 (citing Vespe Contracting Co. v. Anvan Corp., 433 F. Supp. 1226 (E.D. Pa. 1977)).  This argument is (a) not relevant to plaintiffs' strict liability claim and (b) without legal merit.  "A partnership is an association of two or more persons to carry on as co-owners a business for profit."  15 Pa. C.S. § 8311(a).  "To determine if a partnership exists, there must be clear mutual assent on the part of two or more persons to form a partnership."  Leprino Foods Co. v. Gress Poultry, Inc., 379 F. Supp. 2d 650, 655 (M.D. Pa. 2005).  Plaintiffs argument that a partnership exists is based on the statement by BI and its representatives that BI "works in partnership with its customers."  Pls. Resp. to BI Mot. ¶ B.1 (citing Clevenger Dep., Ex. E, at 14-17; VanHouten Dep., Ex. I at 27-38).  This statement does not evince "clear mutual assent" to form a legally binding partnership.  Id.  The term partnership is not a "magic word," and its use is not imbued with legally controlling significance.  Cf. Carter v. Helmsley-Spear, Inc., 71 F.3d 77, 87 (2d Cir. 1995) (holding that the use of the terms "employee" and "employer" were not sufficient to create a legally significant employment relationship).

To the contrary, the evidence demonstrates that the electronic monitoring equipment immediately notified the PAPPD that Brown absconded from his home detention.[10]  Moreover, plaintiffs do not argue that the product did not function as designed, see Pls. Resp. to BI Mot. ¶ 13, and plaintiffs' experts do not opine that the equipment was unsafe or defective.  Plaintiffs' expert, Sheriff Warren Evans of Wayne County, specifically explained that, in Wayne County, where similar electronic monitoring technology is utilized, there is no expectation that the electronic monitoring unit will do any more to protect the public safety than provide information to law enforcement agencies.[11]  See Evans Dep. at 87.

Accordingly, the Court concludes that plaintiffs' evidence is insufficient, as a matter of law, to demonstrate any actionable design defect.

---

[10]Plaintiffs' Complaint also alleged that the equipment was defectively designed in that it was too easily removed.  See Compl. ¶¶ 22; 80.  However, there is no evidence as to how or when the transmitter was removed.  Farrell Dep., at 223-25, Pl.'s Resp., Ex. C.

[11]  The relevant testimony from the Evans deposition is as follows:

Q:      [D]oesn't the BI information that provides this immediate notification offer potential assistance to public safety?
A:      I think it – I think it does provide assistance.  I don't think it in and of itself does anything to protect public safety.
Q:      Is that because the equipment itself is just the equipment?
A:      Correct.
Q:      It's what people do with the information the equipment provides that's the issue of public safety, correct?
A:      That is correct.
Q:       In fact, in Wayne County you have no expectation that the BI equipment is going to help in public safety other than to provide information to you, correct?
A:      That is correct.
Q:      And in this instance the BI equipment provided the information, correct?  In the Sean Brown instance?
A:      Yes

Evans Dep. at 87.

### 3.     Plaintiff Cannot Proceed on any Breach of Warranty Claims

In their response to BI's motion for summary judgment, plaintiffs argue that the product was defectively designed because it was not fit for its intended purpose, which plaintiffs characterize as "to maintain the public safety."  Pls. Resp. to BI Mot. ¶ 10.  However, whether a product was *fit* for its intended purpose is not the proper inquiry in a design defect case; "[a] product is not defective unless it possesses any feature that renders it *unsafe* for the intended use."  Metzgar v. Playskool, Inc., 30 F.3d 459, 461 (3d Cir. 1994) (emphasis added).  In arguing that the product was "not fit for its intended purpose," plaintiffs appear to invoke a claim for breach of warranty for fitness for a particular purpose.  See 13 Pa. C.S.A. § 2315.  To the extent that plaintiff is advancing a breach of warranty claim, such a claim is not properly before the Court.

First, the Court notes that on February 23, 2007, plaintiffs filed a motion seeking leave to amend the Complaint to include a claim for breach of implied warranty of fitness.  BI filed a response in opposition to plaintiffs' motion on March 8, 2007.  On March 16, 2007, plaintiffs withdrew the motion for leave to amend the Complaint.  Accordingly, there is no claim for breach of implied warranty before the Court at this time.

Second, any breach of implied warranty of fitness for a particular purpose claim would be barred by the statute of limitations.  Under Pennsylvania law, the statute of limitations for breach of warranty claims is four years.  13 Pa. C.S.A. § 2725; 42 Pa. C.S.A. § 5525(2).  The statute of limitations for such a claim begins to run on the date of the sale of the product, irrespective of the "aggrieved party's lack of knowledge of the breach."  13 P.S.A. § 2725(a)-(b)).  The electronic monitoring unit at issue in this case was sold by BI to the Philadelphia Pre-Trial Services

28

Department in 1993.  See Request for Admissions, BI Mot., Ex. B ¶¶ 2, 15.  Thus, the statute of limitations for any claims arising out of warranties for that product expired sometime in 1997, long before the events at issue in this case.

      **C.**     **Conclusion**

     In sum, the Court concludes that there is no genuine issue of material fact as to whether the product was defectively designed and the Court grants defendant BI's motion for summary judgment on this claim.

**VI.**    **CONCLUSION**

     For the foregoing reasons, the Court grants the motion for summary judgment filed by defendants PAPPD and the City and the motion for summary judgment filed by defendant BI. The Court enters judgment in favor of defendants BI, PAPPD, and the City, and against plaintiffs, Norma K. Henry, Executor of the Estate of Patricia Stallworth, and Executor of the Estate of Patricia Henry; and Franklin Cofer, Executor of the Estate of James Lee Cofer.

     It is undeniable that some of the defendants' policies and procedures played a role in the tragic fate that met plaintiffs' decedents.  However as discussed above, binding precedent forecloses any federal constitutional or state law liability based on defendants' action and inaction.   Although the heartrending nature of the facts in this case presents the temptation to circumvent such precedent, the Court is without power to do so.  See Bennett, 2007 U.S. App. LEXIS 19929, at *1-2.

     An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NORMA K. HENRY, Executor of the** | : | **CIVIL ACTION** |
| **Estate of Patricia Stallworth; and Executor** | : | |
| **of the Estate of Patricia Henry; and** | : | |
| **FRANKLIN COFER, Executor of the** | : | |
| **Estate of James Lee Cofer** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PHILADELPHIA ADULT PROBATION** | : | |
| **AND PAROLE DEPARTMENT; CITY OF** | : | |
| **PHILADELPHIA; and, BI** | : | |
| **INCORPORATED** | : | **NO.  05-4809** |
| **Defendants,** | : | |
| | : | |
| | : | |

**O R D E R**

   **AND NOW**, this 6th day of September, 2007, upon consideration of the Motion by

Defendant, BI Incorporated, for Summary Judgment Pursuant to Rule 56 of Federal Rules of

Civil Procedure (Document No. 64, filed Apr. 19, 2007); Plaintiffs' Response to Defendant BI

Incorporated Motion for Summary Judgment With Regard to Plaintiffs' Claim for Relief Based

on the Theory of Product Liability (Document No. 71, filed May 4, 2007); Reply of Defendant,

BI Incorporated, to Plaintiff's Response to Defendant, BI Incorporated's Motion for Summary

Judgment (Document No. 75, filed May 8, 2007); Defendants' Motion for Summary Judgment

filed by defendants Philadelphia Adult Probation and Parole Department and City of Philadelphia

(Document No. 67, filed Apr. 20, 2007); Plaintiffs' Memorandum of Law in Opposition to the

Defendants City of Philadelphia and Philadelphia Adult Probation and Parole Department

Motion for Summary Judgment (Document No. 74, filed May 5, 2007); and Defendants' Reply

Memorandum in Further Support of Motion for Summary Judgment filed by defendants

Philadelphia Adult Probation and Parole Department and City of Philadelphia, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

1.      The Motion by Defendant, BI Incorporated, for Summary Judgment Pursuant to Rule 56 of Federal Rules of Civil Procedure (Document No. 64) is **GRANTED** and **JUDGMENT IS ENTERED** in **FAVOR** of defendant, BI Incorporated, and **AGAINST** plaintiffs, Norma K. Henry, Executor of the Estate of Patricia Stallworth, and Executor of the Estate of Patricia Henry; and Franklin Cofer, Executor of the Estate of James Lee Cofer; and

2.      Defendants' Motion for Summary Judgment filed by defendants Philadelphia Adult Probation and Parole Department and City of Philadelphia (Document No. 67) is **GRANTED** and **JUDGMENT IS ENTERED** in **FAVOR** of defendants, Philadelphia Adult Probation and Parole Department and City of Philadelphia, and **AGAINST** plaintiffs, Norma K. Henry, Executor of the Estate of Patricia Stallworth, and Executor of the Estate of Patricia Henry; and Franklin Cofer, Executor of the Estate of James Lee Cofer.

**BY THE COURT:**


        **/s/ Honorable Jan E. DuBois**
            **JAN E. DUBOIS, J.**